UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| WAYNE HOUSTON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03310-JRS-MJD |
| | ) | |
| RICHARD A. MCCORKLE, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Denying Summary Judgment**

On New Year's Day 2017, a detainee in the Henry County Jail struck Plaintiff Wayne Houston in the face, breaking Houston's nose and orbital bone and opening a gash over his eye, requiring multiple surgeries. Houston alleges claims for deprivation of his constitutional rights and for negligence against Defendant Henry County Sheriff Richard A. McCorkle in his official and individual capacities. McCorkle moves for summary judgment (ECF No. 43) on Houston's constitutional claims. The Court ordered—and the parties submitted—supplemental briefing on whether the Fourth Amendment's "objective unreasonableness" standard governs Houston's claims and, if so, whether McCorkle is entitled to summary judgment on that standard. McCorkle's motion—now fully briefed and ripe for decision—is **denied** for the following reasons.

1

## Background

Henry County Sheriff's deputies detained Houston on December 31, 2017. On January 11, 2017, Houston was charged by Information with criminal confinement and child abuse. Those charges were ultimately dismissed.

While in custody prior to a probable-cause determination, Houston was placed in "C Block" of the Henry County Jail. (Houston Dep. 16:2, ECF No. 50-4 at 1.) Between C Block and the rest of the Jail was a barred door, a vestibule, and a solid steel door. (*See* Huxhold Dep. 13:4–14:17, ECF No. 45-7 at 13–14.) Upon arriving in C Block—which was so "packed" with inmates that Houston "couldn't count them all"—Houston made small talk with some of his fellow detainees. (Houston Dep. 16:9–17:11, ECF No. 50-4 at 1–2.) One young man, who was lifting makeshift dumbbells, took an interest in Houston's physique. (Houston Dep. 19:16–21:9.) As they discussed Houston's workout regimen, another detainee hung a blanket to block the CCTV camera. (Houston Dep. 25:3–9.) The weightlifting detainee suddenly exclaimed, "I'm going to kill you!" and struck Houston in the face with part of the makeshift dumbbell, which appeared to Houston to be a pipe. (Houston Dep. 28:16–29:11, ECF No. 45-2 at 9.) The weightlifter, Alan Gideon, and his accomplice, Richard Lawson—neither of whom is party to this suit—pleaded guilty and admitted to their roles in the attack. (Gideon Sent'g Hr'g Tr. 11:20–12:11, ECF No. 50-7 at 11–12; Lawson Sent'g Hr'g Tr. 14:21–15:25, ECF No. 45-9 at 14–15.)

A single control room attendant was responsible for monitoring the video feed from the Jail's 36 CCTV cameras observing the detainees, but monitoring the video feed

was not the attendant's sole or even primary duty—the attendant also had to answer phones and deal with the public. (ECF No. 50-9 at 2–3; Grider Dep. 16:8–22, ECF No. 50-1 at 2; Huxhold Dep. 25:9–16, ECF No. 45-7 at 25.) When she noticed the C Block camera blocked by a blanket, the attendant alerted her supervisor, Richard Huxhold. (Fitzsimmons Dep. 31:6–13, ECF No. 50-5 at 9.) The camera was covered for a total of four minutes. (Fitzsimmons Dep. 31:2–5, ECF No. 50-5 at 9.) Huxhold promptly proceeded to C Block, opened the steel panel door, saw through the barred door that Houston was bleeding, and extracted Houston from C Block. (Huxhold Dep. 13:4–15:5, ECF No. 45-7 at 13–15.) He handed Houston off to another officer, who brought him to another area of the jail. (Huxhold Dep. 15:8–18, ECF No. 45-7 at 15.) Houston was eventually taken to a hospital for treatment. Houston does not challenge the promptness of the response to the blocked camera or the adequacy of the medical care; he challenges the failure to prevent his attacker from obtaining a weapon.

There is evidence that the Henry County Jail had been chronically understaffed for fifteen years, including the time of Houston's injuries, and that Sheriff McCorkle was aware of the understaffing. (Grider Dep. 27:13–16, ECF No. 50-1 at 5.) (Indeed, there is evidence that the jail was especially understaffed at the time of Houston's attack, with just two or three staff on hand for 130 inmates.) There is also evidence that the jail was frequently overcrowded beginning at least as early as July 2016, six months before the attack on Houston, (Grider Dep. 25:3–8, ECF No. 50-1 at 5; ECF No. 50-3); other evidence indicates that the jail had been frequently overcrowded for

3

fifteen years, (Grider Dep. 28:9–19, ECF No. 50-1 at 8). Finally, there is evidence that McCorkle had no policies in place to address issues related to overcrowding. (Def.'s Resp. to Pl.'s 5th Req. Prod. ¶ 1, ECF No. 50-8 at 1; Grider Dep. 23:17–24:5, ECF No. 50-1 at 3–4.)

## Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party." *Monroe v. Indiana Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017). However, the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986), and does not draw "inferences that are supported by only speculation or conjecture," *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

## Discussion

"Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (cleaned up). Rather, government custodians "must take reasonable

4

measures to guarantee the safety of the inmates." *Id.* at 832. This includes protecting inmates from violence at the hands of other inmates. *Id.* at 833.

Most failure-to-protect claims involve inmates incarcerated after conviction. Such claims arise under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). To sustain a failure-to-protect claim under the Eighth Amendment, the plaintiff must prove that "(1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) defendant-officials acted with deliberate indifference to that risk." *Id.* (quoting *Farmer*, 511 U.S. at 834) (quotation marks omitted).

But not all failure-to-protect claims arise under the Eighth Amendment. Pretrial detainees' failure-to-protect claims arise under the Fourteenth Amendment's Due Process Clause "because the State cannot punish a pretrial detainee." *Id.* at 910 (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996)). The Fourteenth Amendment "imposes at least as robust a duty on government custodians" with respect to pretrial detainees as the Eighth Amendment does with respect to convicted prisoners. *Daniel v. Cook Cty.*, 833 F.3d 728, 733 (7th Cir. 2016).

Houston was neither a convicted prisoner nor a pretrial detainee at the time of the attack. Rather, the evidence suggests that Houston's injury occurred after a warrantless arrest but before a probable-cause determination. (Houston Dep. Tr. 13:7–12, ECF No. 45-2 at 5; Pierce Aff., ECF No. 45-3). As the parties now agree, (ECF Nos. 59, 60), the Fourth Amendment—not the Eighth or the Fourteenth—governs conditions of confinement for the period between a warrantless arrest and a probable

5

cause hearing. *See Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). Houston's claim is therefore subject to the "objective unreasonableness" standard, which is less stringent than the Eighth Amendment "deliberate indifference" standard.

The policies central to Houston's claim are the overcrowding—which had been ongoing for at least six months and for which McCorkle appears to have had no policy in place—and understaffing, which had been ongoing for fifteen years. A jury could reasonably conclude that Houston's attacker had a pipe; that the pipe was not detected because the jail was overcrowded and understaffed (a single control room attendant being responsible for monitoring all 36 CCTV cameras and 130 inmates, along with other duties); that the overcrowding and understaffing were *de facto* policies of the jail; that the overcrowding and understaffing were objectively unreasonable under the circumstances; and that Houston would have suffered less harm if the pipe had been detected and confiscated. *See Williams v. Core Civic*, No. 1:17-cv-3706-JMS-MJD, 2019 WL 2177122, at *3 (S.D. Ind. May 20, 2019) (denying summary judgment where evidence suggested defendant's policy of allowing overcrowding and understaffing caused correctional officer to be unable to provide plaintiff adequate medical care).

McCorkle denies that Houston's attacker used a pipe, noting that no pipe was ever recovered from the jail. If, in fact, Houston's assailant did not use a pipe, then the summary-judgment evidence otherwise offers no "support for the conclusion that this incident was anything more than an unfortunate random act of violence in a [jail], which does not impose liability on [jail] officials." *Washington v. LaPorte Cty. Sheriff's*

6

*Dep't*, 306 F.3d 515, 519 (7th Cir. 2002). But Houston testifies that he was struck by a pipe, and there is no video evidence of the attack. Under these circumstances, the Court cannot resolve a factual dispute against the nonmovant on summary judgment. *Cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (declining to credit plaintiff's testimony at summary judgment stage where video evidence "utterly discredited" plaintiff's version of events).

McCorkle has not established that he is entitled to summary judgment on Houston's official-capacity claim. As an Indiana sheriff, McCorkle had a duty to "take care of the county jail and the prisoners there[.]" Ind. Code § 36-2-13-5(a). "Thus, the sheriff's actions are not subject to any further scrutiny or ratification by the county, and the sheriff serves as the county's official decision-maker in matters involving the county jail." *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999).

Nor has McCorkle established that he is entitled to summary judgment on Houston's individual-capacity claim. McCorkle contends that he cannot be held individually liable because he "was not present in the jail in the days and hours leading up to the attack on Houston and could not have had any knowledge of the circumstances contributing to the attack." (Def.'s Mem. at 8, ECF No. 44 at 8.) But, as explained above, there is evidence that McCorkle was aware that the jail was chronically understaffed; that the jail had been frequently overcrowded for at least six months (on one interpretation of the evidence) and perhaps 15 years (on another interpretation); and that no policy was in place to address overcrowding. "If a senior jail or prison official, including a person with final policymaking power, is aware of a systemic lapse

in enforcement of a policy critical to ensuring inmate safety, his failure to enforce the policy could violate the Eighth Amendment. Similarly, if a supervisor designed or is aware of the institution's deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act." *Daniel*, 833 F.3d at 737 (internal quotation marks and citations omitted). There is no reason an arrestee alleging a violation of the Fourth Amendment should face a higher bar than the Eighth Amendment standard articulated in *Daniel*.

## Conclusion

For the foregoing reasons, McCorkle's motion is **denied**, and this matter will proceed to trial.

**SO ORDERED.**

Date: 6/25/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jon C. Abernathy
GOODIN ABERNATHY LLP
jabernathy@goodinabernathy.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com

Zachary J. Stock
POLLACK LAW FIRM PC
zstock@pollacklawpc.com